Opinion Issued June 26, 2008












 

 




In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-01028-CR

____________


QUINSTON GAMBLE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from 10th District Court

Galveston County, Texas

Trial Court Cause No. 06CR1017






MEMORANDUM OPINION


 A jury convicted appellant, Quinston Gamble, of indecency with a child,
enhanced by a prior juvenile offense. Tex. Penal Code Ann. § 21.11 (Vernon
2005). The jury assessed appellant's punishment at 20 years' confinement.

 In nine issues, appellant contends that: (1) the evidence is legally insufficient
to sustain appellant's conviction, (2) the evidence is factually insufficient to sustain
appellant's conviction, (3) the trial court erred when it allowed the State to introduce
evidence of a prior juvenile adjudication during the punishment phase of trial, (4) the
use of appellant's juvenile disposition order for enhancement violated appellant's
constitutional right against cruel and unusual punishment, (5) the State failed to give
appellant timely and proper notice of the juvenile enhancement, (6) the trial court
erred when it admitted the complainant's outcry statement into evidence through the
testimony of the complainant's babysitter, (7) the trial court erred when it admitted
an additional statement of the complainant into evidence through the testimony of the
complainant's babysitter, (8) the trial court erred when it admitted into evidence
medical records identifying appellant as complainant's abuser, and (9) the trial court
erred when it allowed expert testimony, including references to the complainant's
medical records.

 We affirm.

I. Factual Background

 In August of 2005, four-year-old K.W. was living with her mother and her
mother's girlfriend, Crystal Boykins. Also living in the household were appellant and
Matthew Day, Boykins's uncle and the owner of the house. At some point, K.W. and
her mother moved to a different residence, but K.W.'s mother continued to drop K.W.
off at the Day house so that Boykins could babysit K.W. while K.W.'s mother went
to work.

 On October 13, 2005, Boykins was babysitting K.W at the house. Boykins
walked into the room where K.W. slept and found K.W. on the phone with one of
Boykins's friends, upset and crying. K.W. told Boykins that appellant had touched
her between her legs. K.W. also told Boykins that appellant had asked her to take
off her clothes and to get in bed. K.W. stated that appellant had told her she would
get into trouble if she told anyone what had happened.

 Immediately after K.W. told Boykins about the abuse, a confrontation occurred
between Boykins and appellant in K.W.'s presence. Appellant denied abusing K.W.
and K.W. replied, "Yes, you did. You did do it. You did touch me." K.W. was still
crying. Boykins then called K.W.'s mother, who returned from work and went with
K.W. to the police station to report the assault.

 Appellant was subsequently indicted for aggravated sexual assault of a child
and indecency with a child. See Tex. Penal Code Ann. § 22.021 (Vernon Supp.
2007), § 21.11 (Vernon 2003). The State presented four witnesses at the guilt-innocence phase of trial: Boykins, Detective Holly Johnson, Dr. James Lukefahr, and
K.W. Boykins initially testified outside the presence of the jury. Once the trial judge
had qualified Boykins as K.W.'s outcry witness, she then testified in front of the jury
regarding K.W.'s statement to her concerning the abuse. Boykins described K.W.
as "very upset." Boykins also testified that, when she discovered K.W. on the phone
and crying, the person to whom K.W. was speaking told Boykins, "You need to talk
to her. There is something wrong." Boykins stated that the person on the other end
of the phone "would not get into the details with me."

 Boykins also told the jury that on November 4, 2005, she gave a written
voluntary statement to Detective Johnson of the Galveston Police Department. In her
written statement, Boykins explained K.W.'s outcry made on October 13, 2005. The
written statement was admitted into evidence and read to the jury. 

 Detective Holly Johnson, the officer who investigated the case, testified next
on behalf of the State. Johnson told the jury that after speaking with K.W.'s mother,
she scheduled a videotape interview for K.W. on November 4, 2005. Johnson
testified that she watched from another room while K.W. was interviewed by a
forensic interview specialist trained to interview children. Appellant's counsel
objected to the videotape's admission, and the statement was not introduced into
evidence or played to the jury. 

 Johnson also testified that she went to the residence where the incident
allegedly occurred, obtained a consent to search from Matthew Day and removed a
piece of carpet from the premises in order to test for the presence of semen. 
However, she did not know whether any semen had been found on the carpet.

 The results of the Texas Department of Public Safety Crime Lab test for semen
were read to the jury by stipulation. The result of the testing showed no apparent
semen was detected on the oval piece of carpet taken from appellant's residence, and
thus no DNA analysis was performed on oral swabs taken from appellant.

 The State's third witness was Dr. James Lewis Lukefahr, Medical Director of
the ABC Center at the University of Texas Medical Branch (UTMB) in Galveston,
Texas. The ABC Center is UTMB's facility for examining children who may be
victims of child abuse and neglect. Dr. Lukefahr told the jury that he personally did
not examine K.W. when she reported to the ABC Clinic on November 14, 2005, and
that he was relying on the record prepared by another doctor who had examined her. 
He further stated that in his capacity as Medical Director he reviews records of all
patients that come through the ABC Clinic. He also explained to the jury that in cases
where he did not do the examination himself, he confers with the specialist who
performed the examination of the child before signing the medical records. 

 Before Dr. Lukefahr was called to testify, the State offered into evidence
K.W.'s medical records from ABC. Outside the presence of the jury, the trial court
found Dr. Lukefahr to be an expert and qualified to explain the medical records to the
jury. Dr. Lukefahr read the "occurrence history" to the jury, in which K.W.'s
examining doctor had chronicled K.W.'s statement about the incident. Dr. Lukefahr
also noted that there was no evidence of any type of recent injury to K.W., no
irregularities in the examination, and nothing that would show penetration. He
explained that because roughly three months had passed between the time of the
alleged abuse and the examination, any injuries would have had sufficient time to
heal. On cross-examination by appellant's attorney, Dr. Lukefahr stated that K.W.
described only "touching" between herself and appellant and did not disclose any
penetrating trauma or pain or discomfort. At the end of Dr. Lukefhar's initial direct
examination by the State, he told the jury that his diagnosis in this particular case was
child sexual abuse.

 The State's fourth and final witness was K.W. K.W. told the jury that, during
the summer of 2005, she lived in a house with appellant, her mother, Day, and
Boykins. K.W. testified that, while in the house, she went into Day's room where she
found appellant alone and playing a videogame. K.W. stated that while she was alone
with the appellant he told her to take off her clothes. K.W. recounted that after she
removed her clothes, the appellant put his hand in her "cooler bear." The trial record
indicates that K.W. meant the term "cooler bear" to refer to her vagina.

 With the help of a boy doll, K.W. told the jury that she called the male sexual
organ a "ding-a-ling." K.W. then testified that while appellant's clothes were off
appellant made K.W. touch him between his legs on his "ding-a-ling." She further
told the jury that when she touched appellant's "ding-a-ling," "milk" came out. 
During her testimony, K.W. positively identified appellant as Quinston Gamble. On
cross-examination, K.W. told the jury that appellant assaulted her in the
"summertime." K.W. gave conflicting testimony about whether the abuse occurred
before or after she and her mother moved out of Matthew Day's house.

 Following K.W.'s testimony, the State rested. Appellant did not call any
witnesses, but did offer into evidence a copy of a Deferred Judgment Community
Supervision Order showing the State's first witness, Crystal Boykins, to be on
probation. The State made no objection.

 The jury returned a verdict of guilty on the indecency with a child count, but
found appellant not guilty of the offense of aggravated sexual assault of a child. 
During the punishment phase of trial for the indecency count, the State introduced
enhancement evidence consisting of three prior judgments against appellant. One of
these judgments was a juvenile adjudication for burglary of a habitation. Appellant
pleaded "not true" to the juvenile enhancement allegation. In order to lay the
predicate for the judgments, the State called Sergeant William Houston O'Briant, the
fingerprint expert for the Galveston County Sheriff's Office. Sergeant O'Briant
testified that appellant's fingerprints matched those fingerprints on the judgments. 
After overruling appellant's objection, copies of the judgments were admitted into
evidence. The State and appellant, who offered no testimony or evidence at
punishment, then rested. II. Discussion

A. Sufficiency of the Evidence

 In his first and second issues, appellant challenges the legal and factual
sufficiency of the evidence supporting his conviction. Specifically, appellant claims
that K.W.'s testimony and other evidence was related to the indictment for aggravated
sexual assault of a child--not indecency with a child. Therefore, appellant contends
the verdict "was the product of an improper compromise by a jury who correctly
acquitted appellant of the aggravated offense, but, based on the same evidence, felt
they had to convict appellant of something since a child had made an allegation." 

 1. Standards of Review

 a. Legal Sufficiency

 When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). When examining the legal sufficiency of the evidence,
appellate courts view the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Poindexter v. State, 153 S.W.3d 402, 405
(Tex. Crim. App. 2005) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct.
2781, 2788-89 (1979)). This standard concedes to appellate courts only a limited
role. The inquiry does not require a reviewing court to ask itself whether it believes
that the evidence at the trial established guilt beyond a reasonable doubt. Jackson,
443 U.S. at 318-19, 99 S. Ct. at 2789. In this regard, the court is not to position itself
as a thirteenth juror in assessing the evidence. Narvaiz v. State, 840 S.W.2d 415, 423
(Tex. Crim. App. 1992) (stressing that appellate judges are not factfinders); Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Rather, the court is to
position itself as a final, due process safeguard, ensuring only the rationality of the
factfinder. Moreno, 755 S.W.2d at 867. When faced with conflicting evidence, we
presume the trier of fact resolved conflicts in favor of the prevailing party. Turro v.
State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1 993). Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt,
we must affirm. McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

 b. Factual Sufficiency

 When conducting a factual sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). There
are two prongs to a factual sufficiency analysis. First, we must ask whether the
evidence introduced to support the verdict, although legally sufficient, is so weak that
the jury's verdict seems clearly wrong and manifestly unjust. Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (quoting Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000)). Second, we must ask whether, considering any
conflicting evidence, the jury's verdict, although legally sufficient, is nevertheless
against the great weight and preponderance of the evidence. Id. at 415. 

 During the course of the analysis, we are mindful that we must give appropriate
deference to the jury findings in order to prevent intruding on the factfinder's role as
the sole judge of the weight and credibility of the evidence. See Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006), cert. denied, 128 S.Ct. 87 (2007); see
also Johnson, 23 S.W.3d at 7. Therefore, unless the record clearly reveals a different
result is appropriate we must defer to the jury's determination concerning what
weight to give contradictory testimonial evidence because resolution often turns on
an evaluation of credibility and demeanor. See Marshall, 210 S.W.3d at 625. In
other words, as the determiner of the credibility of the witnesses, the jury may choose
to believe all, some, or none of the testimony presented. Cain, 958 S.W.2d at 407 n.5. 
In our review, we must also discuss the evidence that, according to appellant, most
undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003). 

 2. Indecency with a Child

 A person commits the offense of indecency with a child if, with a child younger
than seventeen years and not the person's spouse, the person engages in sexual
contact with the child or causes the child to engage in sexual contact. Tex. Penal
Code Ann. § 21.11(a)(1). "Sexual contact" includes any touching by a person,
including touching through clothing, of the anus, breast, or any part of the genitals
of a child. Id. § 21.11(c)(1). "Sexual contact" also includes any touching of any part
of the body of a child, including touching through clothing, of the anus, breast, or any
part of the genitals of a person. Id. § 21.11(c)(2). 

 3. Analysis 

 Appellant argues that the evidence is legally and factually insufficient to
support the allegation in the indictment that appellant did intentionally "cause . . .
[K.W.] to engage in sexual contact by causing [K.W.] to touch the genitals of . . .
[appellant.]" To support his contention, appellant urges that K.W.'s testimony
regarding where and how appellant touched her was conflicting and that the
additional testimony contained no evidence as to acts that would have constituted
indecency with a child, only aggravated sexual assault. 

 However, in a legal-sufficiency review, the jury is the exclusive judge of the
credibility of witnesses and the weight to be given their testimony. Jones v. State,
944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of conflicts in the
evidence is within the exclusive province of the jury. Id. It was the jury's
prerogative to resolve any apparent conflicts within K.W.'s testimony in the State's
favor and to accept K.W.'s testimony that appellant made her touch him "between his
legs on his 'ding-a-ling.'" Additionally, the testimony of the child victim alone is
sufficient to support a conviction for indecency with a child by contact. See Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); see also Lee v. State, 186 S.W.3d
649, 655 (Tex. App.--Dallas 2006, pet. ref'd). 

 Moreover, Boykins testified over appellant's objection that K.W. had told her
that appellant touched her between her legs. Finally, Dr. Lukefahr testified that
K.W.'s medical history revealed "[appellant] touching her private parts and [K.W.]
touching his private parts." Thus, viewing the evidence in the light most favorable
to the verdict, we conclude that a rational trier of fact could have found the essential
elements of the offense of indecency with a child beyond a reasonable doubt.

 For the same reasons given in our resolution of appellant's legal sufficiency
claim, we also reject his factual sufficiency challenge. Again we note that the issue
of credibility is within the sole province of the jury in a factual-sufficiency review. 
Cain, 958 S.W.2d at 408. There is no objective basis in the record upon which we
can conclude that the great weight and preponderance of the evidence contradicts the
jury's verdict. Watson, 204 S.W.3d at 417.

 Because we hold that the evidence is legally and factually sufficient to support
appellant's conviction for indecency with a child by contact, we overrule appellant's
first and second issues.


B. Improper Admission of Juvenile Adjudication for Enhancement Purposes


 In his third, fourth, and fifth issues, appellant attacks the use of his February
18, 2000, juvenile adjudication for burglary of a habitation as an enhancement with
respect to the instant offense. First, appellant contends the juvenile adjudication
should not have been used to enhance appellant's conviction because it did not show
on its face a jury waiver by appellant. Second, appellant urges this court to find that
the use of a juvenile adjudication to enhance punishment for offenses committed as
an adult violates the Eighth Amendment's prohibition against cruel and unusual
punishment. Third, appellant contends the State did not give appellant written notice
of the enhancement and that there was no enhancement paragraph pleaded in the
indictment, therefore appellant was harmed. 

 1. The Law Pertaining to Juvenile Enhancements

 In 1995, the Legislature provided that under certain circumstances a felony
adjudication in juvenile court can be used as a prior felony conviction for
enhancement of punishment in subsequent criminal proceedings. See Tex. Penal
Code Ann. § 12.42(f) (Vernon Supp. 2007); Tex. Fam. Code Ann. § 51.13(d)
(Vernon Supp. 2007). The provision applies only if the juvenile received a
commitment or sentence to the Texas Youth Commission (TYC) for the felony
adjudication. Id. It does not apply if the felony adjudication was for a state jail
felony. Id.

 The juvenile judgment against appellant for burglary of a habitation was a
conviction of a second degree felony for enhancement purposes. Tex. Penal Code
Ann. § 30.02(a)(1), (c)(2) (Vernon 2003). Therefore, when the jury found the alleged
juvenile enhancement to be true, the range of punishment for the second degree
felony of indecency with a child became a first degree offense with a punishment
range of imprisonment for life or a term of not more than 99 years or less than five
years. Tex. Penal Code Ann. § 21.11(d) (Vernon 2003); Tex. Pen. Code Ann. §
12.42(b) (Vernon Supp. 2007). The jury set appellant's punishment at confinement
for 20 years. 

 2. Failure to Show Jury Waiver on Juvenile Disposition Order

 Appellant claims that because the juvenile disposition order used to enhance

his punishment did not contain evidence that the appellant gave a written jury waiver,
the disposition order was a void judgment and should not have been admitted into
evidence over his objection.

 Texas Family Code section 54.03 states that, in juvenile proceedings, "Trial
shall be by jury unless jury is waived in accordance with Section 51.09." Tex. Fam.
Code Ann.§ 54.03(c) (Vernon Supp. 2007). Section 51.09 provides that "any right
granted to a child by this title or by the constitution or laws of this state or the United
States may be waived in proceedings under this title if . . . the waiver is made in
writing or in court proceedings that are recorded." Tex. Fam. Code Ann. § 51.09(4)
(Vernon 2003).

 As appellant notes, the juvenile adjudication relied on for enhancement in this
case contains no indication that a jury was waived before the hearing and appellant's
subsequent commitment to TYC by the juvenile judge. Appellant cites Boyd v. State,
660 S.W.2d 820 (Tex. Crim. App. 1983) and Ex parte Felton, 590 S.W.2d 471 (Tex.
Crim. App. 1979), for the proposition that "an enhancement without a valid jury
waiver is a void judgment." However, appellant has cited no authority indicating that
the failure of a judgment to reflect waiver of a jury trial renders it void. Basurto v.
State, No. 14-05-00419-CR, 2006 WL 2560272, at *3 (Tex. App.--Houston [14th
Dist.] September 7, 2006, pet. ref'd) (memo op., not designated for publication). 
Rather, where the trial record (not the judgment, as appellant contends) is silent,
waiver of trial by jury cannot be presumed on direct appeal. Id. (citing Samudio v.
State, 648 S.W.2d 312, 314 (Tex. Crim. App. 1983)). Appellant has not argued or
provided evidence that the complete record from his 2000 juvenile adjudication is
silent regarding waiver, nor has he otherwise established that the 2000 adjudication
is void. Id; see also Johnson v. State, 72 S.W.3d 346, 349 (Tex. Crim. App. 2002)
(holding burden rests with appellant to offer evidence that error occurred regarding
jury waiver). Thus, appellant has not shown that the trial court committed error in
overruling his objection to the introduction of the juvenile dispostion order on that
ground. See Basurto, 2006 WL 2560272 at *3 (citing Ex parte White, 160 S.W.3d
46, 53 (Tex. Crim. App. 2004)).

 3. Violation of Eighth Amendment's Prohibition Against Cruel and
Unusual Punishment


 In his fourth issue, appellant asks this court to apply the United States Supreme
Court's decision in Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183 (2005), to the
law in Texas concerning juvenile enhancements.

 In Roper, the Court forbade the imposition of the death penalty on offenders
who were under the age of 18 when their capital crime was committed. As appellant
correctly notes, the Court's ruling recognized "three general differences between
juveniles under 18 and adults" which "demonstrate that juvenile offenders cannot
with reliability be classified among the worst offenders." Roper, 543 U.S. at 569; 125
S. Ct. at 1195. These characteristics are:

 (1) A lack of maturity and an underdeveloped sense of responsibility;


 (2) Increased vulnerability to negative influences and outside pressures,
including peer pressure; and


 (3) More transitory and less fixed personality traits and character.

 

Id. at 569-70; 125 S. Ct. at 1195. 


 Appellant urges that the same considerations which influenced the Supreme
Court in Roper to forbid the execution of persons for offenses committed when they
were younger than 18 apply when juvenile offenses are later used to enhance the
range of punishment. However, we decline to extend the reasoning of Roper to the
instant case.

 We note initially that Roper operates only to prohibit the imposition of the
death penalty on offenders who were under the age of 18 when their crimes were
committed. Id. at 578, 125 S. Ct. at 1200. The Supreme Court has recognized that,
"[t]he penalty of death differs from all other forms of criminal punishment, not in
degree but in kind. It is unique in its total irrevocability." Harmelin v. Michigan, 501
U.S. 957, 995-96, 111 S. Ct. 2680, 2702 (1991) (quoting Furman v. Georgia, 408
U.S. 238, 306, 92 S. Ct. 2726, 2760 (1972) (Stewart, J., concurring)). In contrast,
Texas's enhancement scheme is not the type of "unique" and "irrevoca[ble]" type of
punishment that the Supreme Court addressed in Roper. 

 When an appellate court reviews the constitutionality of a statute, it is to
presume the statute is valid and that the Legislature has not acted unreasonably or
arbitrarily in enacting it. Ex parte Flores, 130 S.W.3d 100, 106 (Tex. App.--El Paso
2003, pet. ref'd). The burden rests on the appellant to establish the statute to be
unconstitutional. Id. Moreover, as an intermediate appellate court, we must follow
binding precedent of the Court of Criminal Appeals. McKinney v. State, 177 S.W.3d
186, 192 (Tex. App.--Houston [1st Dist.] 2005), aff'd, 207 S.W.3d 366 (Tex. Crim.
App. 2006). 

 The Court of Criminal Appeals has long upheld the enhancement statute
against all constitutional challenges, including cruel and unusual punishment claims. 
See Thomas v. State, 543 S.W.2d 645, 647 (Tex. Crim. App. 1976); Armendariz v.
State, 529 S.W.2d 525, 527 (Tex. Crim. App. 1975). Appellant cites no cases holding
that the use of a juvenile adjudication as an enhancement is unconstitutional, or
explaining why Roper applies in a non-death penalty context. Thus, appellant has
failed to show that the use of a juvenile adjudication for enhancement purposes
violates the Eight Amendment.

 4. Failure to Give Written Notice of the Enhancement 


 Finally, appellant contends that the State failed to give written notice of its
intent to proffer the 2000 juvenile adjudication for enhancement purposes and that
there was no enhancement paragraph pleaded in the indictment. 

 We first note that enhancement allegations need not be included in an
indictment. Brooks v. State, 957 S.W.2d 30, 32 (Tex. Crim. App. 1997) (concluding
that indictment is merely State's primary pleading in criminal action and certain
matters, such as enhancements, may be plead apart from indictment). Again, this
Court is bound by the precedent of the Court of Criminal Appeals, and the appellant
fails to explain how the law has changed since Brooks or to provide sufficient reason
why we should deviate from precedent. McKinney, 177 S.W.3d at 192. 

 Additionally, our review of the record reveals that the State gave over thirty
days notice of its intent to introduce the 2000 juvenile adjudication as an
enhancement with respect to both the aggravated sexual assault charge and the
indecency charge. (1) We conclude that such notice was adequate in the instant case. 
See Villescas v. State, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) (holding
enhancement notice was not untimely where received by appellant six days before
trial). 

 In light of the foregoing discussion, we overrule appellant's third, fourth, and
fifth issues.C. K.W.'s Statements to Boykins and Appellant

 In his sixth and seventh issues, appellant complains that the trial court erred
when it admitted K.W.'s outcry statement through the testimony of Boykins. 
Appellant first contends that K.W.'s statement to Boykins was not specific enough
to fulfill the statutory requirements of article 38.072 of the Texas Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). Second,
appellant contends that Boykins was not the first person to whom K.W. had made an
outcry because Boykins found K.W. crying and on the phone with one of Boykins's
friends right before K.W. described the incident with appellant to Boykins. Finally,
appellant urges that K.W.'s statement, "You did do it. You did touch me," should
not have been admitted under the "excited utterance" exception to the hearsay rule. 
See Tex. R. Evid. 803(2).

 1. Standard of Review and the Law Pertaining to Outcry Witnesses

 We review a trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003);
Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.--Houston [1st Dist.] 2000, pet.
ref'd). A reviewing court should not reverse unless the record shows a clear abuse
of discretion. Zuliani, 97 S.W.3d at 595; Roberts, 29 S.W.3d at 600. An abuse of
discretion occurs only when the trial judge's decision was so clearly wrong as to lie
outside that zone within which reasonable persons might disagree. Zuliani, 97
S.W.3d at 595; Roberts 29 S.W.3d at 600.

 "'Hearsay' is a statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"
Tex. R. Evid. 801(d). Hearsay testimony is generally inadmissible at trial. See Tex.
R. Evid. 802. However, Code of Criminal Procedure article 38.072 provides a limited
exception to the preclusion of hearsay evidence. See Tex. Code Crim. Proc. Ann.
art. 38.072 (Vernon 2005). The statute defines outcry statements as the victim's
statements made to the first person, other than the defendant, 18 years of age or older,
which describe the alleged offense. Id. § (2)(a). Article 38.072 applies only to
certain offenses, including indecency with a child and other sexual offenses under
Penal Code chapter 21, when the offense is committed against a child 12 years of age
or younger. Id. § (1). The statute further requires that "the trial court finds, in a
hearing conducted outside the presence of the jury, that the statement is reliable based
on time, content, and circumstances of the statement." Id. § 2 (b)(2).

 2. Analysis--K.W.'s Outcry Statements to Boykins

 As to appellant's first argument, appellant correctly notes that testimony about
outcry statements by victims of child abuse must be more than general allegations of
sexual abuse. The statement must have described the alleged offense in some
discernible way and must have more than generally insinuated that sexual abuse
occurred. See Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); see also
Josey v. State, 97 S.W.3d 687, 693 (Tex. App.--Texarkana 2003, no pet); Hollinger
v. State, 911 S.W.2d 35, 39 (Tex. App.--Tyler 1995, pet. ref'd). 

 Appellant urges that K.W.'s statement to Boykins was "not sufficiently specific
and did nothing more than insinuate that some type of unwanted contact might have
occurred." However, we conclude K.W.'s statement to Boykins was more than a
general allusion. Boykins testified on direct and during cross-examination by
appellant's attorney that she was told by K.W. that appellant had touched her between
her legs. K.W. also told Boykins that appellant had asked her to take off her clothes
and to get in bed. K.W. stated that appellant had told her she would get into trouble
if she told anyone what had happened. Given the testimony in its entirety, the trial
court was within its discretion to find that four-year-old K.W.'s statement was meant
to convey that appellant had touched K.W.'s sexual organ. Garcia, 792 S.W.2d at
92. Therefore, we conclude that the trial court did not abuse its discretion in
admitting the statement.

 Next, appellant claims K.W. made her outcry to Boykins's friend during her
phone conversation--not Boykins, and therefore Boykins was not the "first person,
18 years of age or older, other than the defendant, to whom the child made a
statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072, § 2 (a)(2)
(Vernon 2005). It is possible for there to be multiple outcry witnesses if each
individual outcry concerns an event different from the other outcry(ies). Broderick
v. State, 35 S.W.3d 67, 73 (Tex. App.--Texarkana 2000, pet. ref'd). This potential
for multiple outcry witnesses exists because "an outcry witness is not person-specific,
but event-specific." Id. Nevertheless, both the applicable statute and our caselaw are
clear on the proposition that "there may be only one outcry witness to the victim's
statement about a single event." Id.

 The burden is on appellant to show other evidence was introduced which
shows K.W. made a specific statement of abuse to another qualified person before
her statement to Boykins. See In re. Z.L.B., 102 S.W.3d 120, 123 (Tex. 2003). The
record does not identify the person K.W. was speaking to on the telephone and does
not indicate the precise nature of their conversation. Therefore, we again conclude
the trial court acted within its discretion in finding Boykins to be the first person over
the age of 18 to whom K.W. made an outcry statement.

 3. Analysis--Excited Utterance

 Finally, appellant contends the trial court erred when it admitted K.W.'s
statement, "You did do it. You did. You touched me," under the excited utterance
exception to the hearsay rule. Appellant maintains that the conversation between
K.W. and appellant was too remote in time from the assault to constitute an "excited
utterance" and that the State was attempting to circumvent the requirements of article
38.072 of the Code of Criminal Procedure. See Tex. R. Evid. 803(2); Tex. Code
Crim. Proc. Ann. art. 38.072.

 The excited utterance exception is founded on the belief that statements
resulting from a startling event are trustworthy because of the declarant's lack of
opportunity to fabricate. Gilbert v. State, 865 S.W.2d 601, 602 (Tex. App.--El Paso
1993, no pet.) The critical factor is whether the declarant made the statement while
dominated by the emotions arising from a startling event or condition. Mathews v.
State, 835 S.W.2d 248, 250 (Tex. App.--Fort Worth 1992, no pet.); Hawkins v. State,
792 S.W.2d 491, 495 (Tex. App.--Houston [1st Dist.] 1990). The courts recognize
that what might not be startling to an adult might be overwhelming to a child. 
Couchman v. State, 3 S.W.3d 155, 159 (Tex. App.--Fort Worth 1999, pet. ref'd). 
The Court of Criminal Appeals defines a spontaneous utterance as an exception to the
hearsay rule if:

 (1) the statement is the product of an occurrence startling enough to
produce a state of nervous excitement which would render the utterance
spontaneous and unreflecting;

 

 (2) the utterance is made before there is time to contrive and
misrepresent, that is, the state of excitement produced by the startling
event must still dominate the reflective powers of the mind;

 

 (3) the utterance must relate to the circumstances of the occurrence
preceding it.

Sellers v. State, 588 S.W.2d 915, 918 (Tex. Crim. App. 1979).

 Boykins testified that K.W. was upset and crying when Boykins discovered her
talking on the phone. Immediately after K.W. told Boykins about the abuse, a
confrontation occurred between Boykins and appellant in K.W.'s presence. Appellant
denied abusing K.W. and K.W. replied "Yes, you did. You did do it. You did touch
me." K.W. was still crying. 

 The State cites Bondurant v. State, 956 S.W.2d 762 (Tex. App.--Fort Worth
1997, pet. ref'd), for the principle that the startling event which triggers an excited
utterance need not be the crime for which the appellant is on trial. We agree. See
Hunt v. State, 904 S.W.2d 813, 816 (Tex. App.--Fort Worth 1995, pet. ref'd); Gilbert
v. State, 865 S.W.2d 601 (Tex. App.-- El Paso 1993, no pet). It was the shock of the
confrontation between appellant and Boykins which triggered K.W.'s excitement and
the ensuing out-of-court statement. Boykins's testimony that K.W. was crying and
upset showed that the event was startling enough to produce a state of nervous
excitement so as to render the remarks spontaneous. See Hunt, 904 S.W.2d at 816. 
 The evidence also showed that the utterance was made before there was time to
misrepresent and that it related to the circumstances of the occurrence preceding it. 
Id. at 817. Therefore, we find it was not an abuse of discretion for the trial court to
find the statements were excited utterances and therefore exceptions to the hearsay
rule.

 We overrule appellant's sixth and seventh issues. 

D. K.W.'s Statements to Dr. Lukefahr

 In his eighth and ninth issues, appellant argues that the trial court erred in
admitting the hearsay statements of Dr. Lukefahr because the State did not lay a
predicate for the admission of these statements and they served as prior consistent
statements that improperly reinforced and supported what Boykins had already
testified about. Appellant further contends Dr. Lukefahr was not qualified to testify
as to the medical condition of K.W. because the true purpose of UTMB's ABC Clinic
is to conduct law enforcement investigations, not provide medical treatment.

 1. Analysis--Medical Exception to the Hearsay Rule

 We do not find it necessary to reiterate the law pertaining to hearsay and the
standard of review for improperly admitted evidence. The State argues, and we agree,
that K.W.'s medical records were admissible under Texas Rule of Evidence 803(4)
which excepts from the hearsay rule:

 Statements made for the purpose of medical diagnosis or treatment and
describing medical history, or past or present symptoms, pain or
sensations, or the inception or general character of the cause or external
source thereof, insofar as reasonably pertinent to diagnosis or treatment.


Tex. R. Evid. 803(4).

 As the San Antonio Court of Appeals explained in Macias v. State, 776 S.W.2d
255, 259 (Tex. App.--San Antonio 1989, pet. ref'd), this rule now explicitly includes
statements of the "inception or general character of a cause or external source thereof,
insofar as reasonably pertinent to diagnosis or treatment." Our court expanded on
that observation in Tissier v. State, 792 S.W.2d 120, 125 (Tex. App.--Houston [1st
Dist.] 1990, pet. ref'd). In Tissier, the child victim told the treating doctor during a
two-week hospital stay that the appellant had hit him in the stomach and later
instructed him not to tell anyone about it. Id. Relying on an Eighth Circuit case in
which the court said a child abuse victim's statement to a physician during a medical
examination identifying the abuser can be "reasonably pertinent to diagnosis or
treatment" because it is the type of statement reasonably relied on by a physician, we
held the trial court did not err in admitting the testimony of the treating physician
under the medical exception to the hearsay rule. Id. at 125 (citing United States v.
Renville, 779 F.2d 430 (8th Cir. 1985)). 

 Furthermore, other courts have held that a physician's testimony regarding a
statement identifying a defendant as the offender in a sexual assault case is admissible
under Rule 803(4) because the identity is reasonably pertinent to medical diagnosis
or treatment. See Ware v. State, 62 S.W.3d 344, 351 (Tex. App.--Fort Worth 2001,
pet. ref'd) (holding grandparent's statement to doctor that child was afraid of alleged
abuser falls within this exception to hearsay rule); Fleming v. State, 819 S.W.2d 237,
247 (Tex. App.--Austin 1991, pet. ref'd) (holding child complainant's statements to
pediatrician and mental health therapist describing abusive acts and identifying
abuser were reasonably pertinent to medical diagnosis and treatment, and were
properly admitted pursuant to Rule 803(4)).

 Appellant cites Campbell v. State, 718 S.W.2d 712, 714-16 (Tex. Crim. App.
1986) and Haughton v. State, 805 S.W.2d 405, 407-08 (Tex. Crim. App. 1990), in
support of his argument that K.W.'s statements are prior consistent statements and
that no predicate was laid by the State which would open the door to the admission
of the statements. However, these cases are distinguishable because they do not
pertain to medical records. Additionally, these decisions were before the adoption of
Rule 803(4).

 Accordingly, we hold that the trial court did not abuse its discretion in
overruling appellant's hearsay objection to Dr. Lukefahr's testimony relating to
K.W.'s statements identifying appellant as the person who touched her and describing
the event.


 2. Analysis-- Qualifications of Dr. Lukefahr as Expert Witness

 In appellant's ninth and final issue, he argues that the trial court abused its
discretion in overruling appellant's objection to the testimony of Dr. Lukefahr and the
admission of the medical records from which he was testifying. Specifically,
appellant contends that the true purpose of the ABC Clinic of UTMB is to "gather
forensic evidence and develop records with the intent to use them in criminal
prosecutions." Therefore, "the person who performed the examination and gathered
forensic evidence should have been the person to testify about any statements made
by the child and any forensic evidence or conclusion drawn." Id. Appellant cites no
authority in support of this contention.

 The qualifications of a witness to testify as an expert is within the discretion
of the trial court. Gregory v. State, 56 S.W.3d 164, 178 (Tex. App.--Houston [14th
Dist.] 2001, pet. dism'd). Only when the trial court abuses its discretion to the degree
its decision is clearly wrong as to fall outside the zone of reasonable disagreement
will the trial court's decision be subject to reversal on appeal. See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

 The trial record in the instant case shows Dr. Lukefahr's knowledge, skill,
experience, training, and education proved him to qualify as a medical expert witness
on child abuse. See Tex. R. Evid. 702; Croft v. State, 148 S.W.3d 533, 544 (Tex.
App.-- Houston [14th Dist.] 2004, no pet.). In addition to serving as the Medical
Director of the ABC Center, Dr. Lukefahr testified that he is a professor on the
UTMB faculty and that he possesses specialized training in the field of child abuse
and neglect. We conclude, therefore, that the trial court did not abuse its discretion
in finding that the doctor was qualified to assist the jury with his testimony. 

 Appellant's eighth and ninth issues are overruled.

 III. Conclusion

 We affirm the judgment of the trial court. 



 Davie L. Wilson

 Justice

Panel consists of Justices Nuchia, Hanks, and Wilson. (2)


Do not publish. Tex. R. App. P. 47.2(b)


1. The certificate of service attached to the instrument entitled "Notice of State's Intent
to Introduce Prior Felony Convictions for the Purpose of Enhancement of Punishment
in Present Offense" indicates that the notice was faxed to appellant's trial attorney on
August 25, 2006, the same day it was filed with the district clerk. Additionally,
appellant's trial counsel acknowledged on the record that he received notice of the
State's intent to use the enhancement.
2. The Honorable Davie L. Wilson, retired Justice, First Court of Appeals, participating
by assignment.